UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:18 CR 120 |
| | ) | |
| RENATO SALAZAR-LOPEZ | ) | |

## OPINION and ORDER

I.     BACKGROUND

Following a traffic stop and search of his vehicle, defendant Renato Salazar-Lopez was charged with possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). Before the court is Salazar-Lopez's motion to suppress the evidence seized from his vehicle during the stop. (DE # 32.) Salazar-Lopez presents two grounds for his motion to suppress.

First, Salazar-Lopez argues that the officer who pulled him over did not have probable cause to conduct the traffic stop. (*Id.* at 1.) The purported basis for the traffic stop was failure to signal a lane change, and Salazar-Lopez has submitted an affidavit swearing that he did signal his lane change. (*Id.* at 3.) The Government agrees that this is a question of fact that requires a hearing. (DE # 34 at 5.) Accordingly, this matter will be referred to the magistrate judge for findings of fact and a report and recommendation on this issue.

The second issue Salazar-Lopez raises in his motion pertains to the length of the traffic stop. Salazar-Lopez argues that the officer who conducted the stop "exceeded his authority by instructing Mr. Salazar-Lopez into the police vehicle, and posing questions

entirely unrelated to any failure to signal." (DE # 32 at 2.) According to Salazar-Lopez's affidavit, after he pulled over, the officer motioned for him to step out of his vehicle and enter the patrol car. (*Id.* at 4.) He argues that this amounted to an unlawful seizure, and because his subsequent consent to a search of his vehicle occurred during an unlawful seizure, all evidence uncovered during the search must be suppressed. (*Id.* at 2.)

The Government has submitted video recordings of the stop. (DE # 34-1.) The visual recordings begin as the officer and Salazar-Lopez walk to the patrol car, and the audio recordings begin once the officer and Salazar-Lopez enter the patrol car. (*Id.*) While the Government has not submitted recordings showing the initiation of the stop, for purposes of this second ground of the motion, defendant only challenges the fact of the officer's instruction that Salazar-Lopez sit in the patrol car, and the officer's questions once inside the patrol car.

The recordings demonstrate that, upon entering the patrol car, the officer asked Salazar-Lopez whether he rented the car he was driving. (*Id.*) Salazar-Lopez indicated that he does not speak very much English. (*Id.*) The officer utilized a translation application on his phone to pose questions regarding: Salazar-Lopez's destination, where he was driving from, his rental of the car, and whether he has any weapons or illegal items in the car. (*Id.*) Salazar-Lopez had difficulty answering the question regarding where he was driving from. (*Id.*) Additionally, while Salazar-Lopez stated that he rented the car he was driving, he could not produce a physical copy of the rental agreement or an electronic copy on his phone. (*Id.*) After five minutes in the patrol car,

2

the officer asked Salazar-Lopez whether the officer could search the car for illegal items and Salazar-Lopez gave his consent. (*Id.*)

Salazar-Lopez requests a suppression hearing on this second ground of his motion, to determine whether the officer instructed Salazar-Lopez to exit his vehicle and sit in the patrol car. (DE # 32 at 2.) The Government opposes the request for a hearing as to this second issue, on the basis that Salazar-Lopez has not identified a disputed material question of fact. (DE # 34 at 12.) Salazar-Lopez did not file a reply to the Government's response.

## II. DISCUSSION

### A. *No Hearing Required*

This court will deny Salazar-Lopez's request for a hearing regarding whether the officer ordered Salazar-Lopez out of his vehicle and into the patrol car. "A defendant who requests a suppression hearing must present definite, specific, detailed, and nonconjectural facts . . . demonstrat[ing] that there is a disputed material issue of fact. Reliance on vague, conclusory allegations is insufficient." *United States v. Clark*, 935 F.3d 558, 568 (7th Cir. 2019) (internal citations and quotation marks omitted). *See also United States v. Martin*, 422 F.3d 597, 602 (2005) ("Evidentiary hearings are necessary only when the party requesting the hearing identifies a significant, disputed factual issue that must be resolved.").

Here, Salazar-Lopez has not identified any disputed material issue of fact. The Government concedes for the purposes of this motion that the officer ordered Salazar-

3

Lopez out of his vehicle and into the patrol car. (DE # 34 at 12.) When the Government responded that no evidentiary hearing was necessary as to the second prong of the motion because no material facts were in dispute, defendant did not reply. Because Salazar-Lopez has not raised any material factual dispute on which the resolution of this issue depends, this court will rule on this aspect of the motion without a hearing. *See Martin*, 422 F.3d at 603.

      B.      *Unnecessary Delay*

Defendant argues that the officer committed an unreasonable seizure in violation of the Fourth Amendment when the officer: (1) ordered Salazar-Lopez out of his vehicle and into the patrol car, and (2) asked Salazar-Lopez questions unrelated to his alleged failure to signal his lane change. (DE # 32 at 2.)

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). The Supreme Court has found that a traffic stop is more analogous to a *Terry* stop than to a formal arrest. *Id.* "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Id.* (internal citations omitted). A traffic stop " 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Id.* at 354-55 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).

In addition to determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop, such as checking the driver's license, determining whether there are any outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id.* at 355. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* The Supreme Court has distinguished these types of routine inquires from other measures, such as dog sniffs, that are aimed at detecting evidence of criminal activity and lack the close connection to roadway safety that ordinary inquiries possess. *Id.* at 355-56.

1. Ordering Salazar-Lopez Into The Patrol Car

The officer was permitted to order Salazar-Lopez from his vehicle and into the patrol car. "' [O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures.'" *Maryland v. Wilson*, 519 U.S. 408, 412 (1997) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977)). *See also United States v. Baker*, 78 F.3d 1241, 1244 (7th Cir. 1996). The fact that the officer then asks the driver to sit in the patrol car does not distinguish the circumstance from that of any other motorist who has been pulled over for a traffic violation, and does not constitute a formal arrest. *Id.*, 78 F.3d at 1244. *See also United States v. Lewis*, 920 F.3d 483, 492 (7th Cir. 2019) (rejecting the defendant's argument that the officer impermissibly prolonged the traffic stop when the officer asked the defendant to sit in the patrol car;

5

"Lewis does not explain why moving him to the squad car was not reasonably incidental" to traffic stop).

Accordingly, in this case, the officer did not commit an unlawful seizure when he instructed Salazar-Lopez to sit in the patrol car. The move to the patrol car did not impermissibly prolong the traffic stop, and was incidental to the mission of the stop.

### 2. Questioning Inside The Patrol Car

Salazar-Lopez argues that the questions the officer posed in the patrol car were unrelated to the traffic offense and therefore were unlawful. "An officer conducting a valid traffic stop can detain the occupants of the vehicle long enough to accomplish the purpose of the stop. And, as part of the stop, police may ask the vehicle's occupants 'a moderate number of questions' and request their identification." *United States v. Muriel*, 418 F.3d 720, 726 (7th Cir. 2005) (internal citation omitted). Questions regarding where a driver is coming from and requesting a car rental agreement are actions ordinary to a traffic stop. *United States v. Offord*, 788 F. App'x 384, 386 (7th Cir. 2019). *See also United States v. Taylor*, 596 F.3d 373, 376 (7th Cir. 2010) ("[E]ven when officers have no basis for suspecting a particular individual of criminal activity, they can generally ask questions of that person and request consent for a search.").

Here, the officer asked Salazar-Lopez questions regarding his travel and the rental of the car he was driving. These questions were routine and related to the mission of the traffic stop. *See Lewis*, 920 F.3d at 492 ("The first challenged part of the video begins with [the officer] asking, "where are we headed to today, sir?" Officers across the

country would be surprised if we countenanced the characterization of this basic, routine question as irrelevant to a traffic stop.")

Moreover, Salazar-Lopez's answers warranted the officer's brief follow-up questions when Salazar-Lopez could not readily identify where he was driving from and could not produce the rental agreement for the car he was driving. *See id.* (defendant's answer to officer's question regarding where he was going was "not entirely forthcoming" and naturally led the officer to ask follow-up questions). "The Constitution allows an officer to ask these questions during a traffic stop, especially when the answers objectively seem suspicious." *Id.* To the extent that the questioning period was slightly prolonged, it was due to Salazar-Lopez's inability to readily produce answers, and to the language barrier – not because the officer made inquiries into unrelated matters.

The questioning period lasted five minutes before Salazar-Lopez granted the officer permission to search his vehicle. "[C]onsent renders a subsequent search reasonable unless given involuntarily, and therefore the relevant focus in determining whether the seizure was reasonable in duration is the time between its initiation and the consent." *Taylor*, 596 F.3d at 376. Salazar-Lopez does not allege that his consent was given involuntarily.

The Seventh Circuit has affirmed the denial of a motion to suppress in similar situations, finding that the officer's routine questions were related to the mission of the traffic stop, and therefore did not impermissibly prolong the traffic stop. *See Lewis*, 920

7

F.3d at 492; *Offord*, 788 F. App'x at 386; *United States v. McBride*, 635 F.3d 879, 882 (7th Cir. 2011); *Martin*, 422 F.3d at 602; *Muriel*, 418 F.3d at 726.

In light of the totality of the circumstances, the traffic stop in this case was not prolonged past the time reasonably required to complete the mission of the stop. Therefore, Salazar-Lopez's motion to suppress the evidence obtained from the search of his vehicle, on the basis that it was the result of an unlawful seizure arising from his questioning in the patrol car, will be denied.

## III. CONCLUSION

For the foregoing reasons, defendant Renato Salazar-Lopez's motion to suppress (DE # 32) is **DENIED IN PART**. Pursuant to 28 U.S.C. § 636(b)(1)(B), LOCAL RULE 72-1, and Federal Rule of Criminal Procedure 59(b)(1), the court hereby **REFERS** this matter to United States Magistrate Judge John E. Martin—who shall set any appropriate briefing schedules and conduct any and all proceedings necessary, including any necessary hearing(s)— for a **REPORT and RECOMMENDATION** with respect to the disposition of the motion regarding probable cause for the initial traffic stop.

**SO ORDERED.**

Date: March 25, 2020

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT